I should tell you all that since we have four cases and I at least have just come from another argument with another panel, we're going to ask you to keep to your time if you can possibly do that unless we ask questions which we are prone to do. Good morning. May it please the court my name is Philip Lauer I represent the appellant in the case of United States versus John Keller. Would you move up your mic so that we can hear you a little bit. I'm sorry. There we go. I represent John Keller in the case of United States versus John Keller. I've asked to reserve three minutes if I could. That's granted. Thank you. If the court please the issue here and I believe the issue that brings us before you deals with whether the government has proven an interstate wire communication sufficient to invoke the wire fraud statute. Our contention is that they have not proven that for a number of reasons which I will address. The wire fraud statute requires an interstate or foreign transmission by means of wire radio or television communication for the purpose of executing a scheme or artifice to defraud. And our contention in this regard is that unlike the mail fraud statute, the wire fraud statute actually requires that the wires be transmitted either in interstate or in foreign commerce. So it's a specific element. It's not the standard merely affecting interstate commerce type of definition. Is it an element? It is an element. Is interstate an element or is it a jurisdictional requirement? I believe it to be an element of the offense and it is actually stated in the in the statute as such. If it's an element does that mean then that consistent with proof required for that element that there would have to be some proof of knowledge on the part of the defendant as to the interstate component? And if your answer is yes, where do you derive that from any kind of case law? Well, I think there is an argument in the cases themselves that knowledge is something that can be a problem for someone in our position. For instance, there are cases holding, and I'm trying to put my finger on the case names, but there are cases holding that if the transmission is something that would occur in the ordinary course of business. And I think that is the standard that this court has used. Isn't this an objective standard as opposed to a subjective standard? I think it is, yes. I think it's an objective standard in this case. And I think, as has been argued by the government, given that my client is a, was a practicing attorney in an area that would make him somewhat familiar with this sort of thing, that it would not be a strong argument for us to say that he had no knowledge of that or couldn't be seen to have. I'm sorry? Well, I'm saying that we've argued it. Yes. Our contention here is more toward the fact that how the system works in this case. Factually, in this case? Yes. Yes, Your Honor. So does it all come down to the role, then, factually, of SVPCO, the intermediary here between the banks that handled the processing of the checks? I don't know that it all comes down to that, but I do believe that's a very important element. I'm sorry, Your Honor? What else is there in this case if it doesn't all come down to the role of that intermediary? That player. Well, I would, I guess what I'm trying to say in that regard is that I think you can interpret the testimony that's been offered regarding their role in several different ways. But in any of those ways, it's our contention. How do you get around Mr. McDowell's testimony? I know you don't mention your brief. Mr. McDowell, actually, I don't think we do need to get around Mr. McDowell's testimony. I mean, Mr. McDowell, for instance, indicates I think clearly that the only participation that occurred outside of Pennsylvania is this, if you will, settlement between the two banks having nothing to do with individual. But he talks about the New York, the transmission via New York. He gives the interstate, whether you call it an element or whether you call it the jurisdictional requirement, he alone does. And Walsh adds a little something, but not an awful lot. Well, but he also says that the clearing between the two banks occurs in Philadelphia. And that what happens at the end of the day is that those two banks, using these so-called cash letters, which are combinations of what have been referred to as kill bundles or stacks of checks, that there are totals that get transmitted to New York. And New York says bank A, you owe bank B $6 million, having nothing to do with this transaction at all. The exchange of checks is in Philadelphia. But McDowell also said, did he not, flatly, that First Union wasn't in possession of the money until the check clearing process was complete. It's at that point that this whole process results in an irrevocable transfer of the money to Kellett, right? And I have to agree with that, but he also indicated that this is a day-to-day process. And what I'm suggesting is that if three days from now something happens to change that, it hasn't altered the fact that this part of this transaction is complete. There may be some action between the two banks. There may be some action between a bank or a holder in due course and some other holder of the instrument. But that isn't the issue, as I would urge you to consider. It's at the conclusion of the day, these two banks have exchanged their checks. They've decided who gets what. And the only thing that New York does is simply add up those numbers and say, you owe bank A, you owe bank B X number of dollars. You try to slip this into CAN, not specifically with this argument. But I suppose your argument, just to try to get you moving into your other argument, that by the time this wire transmission takes place, the scheme is complete because you're dealing here with 12 separate or 17 separate schemes. Correct. And each one was complete at the time of this exchange, at the time of the cashing of the check or the deposit of the check. Correct? Yes. Excuse me. I'm sorry, Your Honor. If SVPCA did not clear the checks, would Keller have received the funds under any circumstances? Well, I think the answer to that is that it isn't SVPCA in New York that makes that determination. It would be them in Philadelphia making that determination. You're not really answering my question. Okay. If it hadn't cleared the checks, would Keller have received the funds? The answer is, with respect to that check, no, he would not. So then, what it does is essential to the completion of the transaction. Well, respectfully, no, I don't think so. You don't? No, I don't. Do you believe that his retention of those funds depends on the check clearing? It does, but the check clearing occurs here, not in New York. Isn't the check clearing ultimately dependent on the wire communication to SVPCA? Well, it's ultimately – the answer to that, I think, is no. For instance, if a check is given – Couldn't a rational jury have concluded otherwise? Based on the testimony, some of which we've already covered in the question. Didn't a rational jury conclude otherwise? A rational jury did conclude otherwise. We contend, however, without proper – And what is our standard of review of that jury finding? Well, I think in this case, we are contending that – we are contending that the government has simply not proven it, and therefore, it's an error of law for the Court to have allowed it to proceed. Well, did they object to the – well, they did object a little bit to the instruction. The instruction was the government must prove beyond a reasonable doubt that a transmission wire, et cetera, was in fact used in some manner to further or to advance or to carry out the scheme involved. What's wrong with that instruction? Well, you don't contend there's anything wrong with that instruction, do you? We contend that there's more that has to be said. But you don't contend that there is any error in and of itself to that instruction. That's what I read from the – Your Honor, I don't. I contend it's incomplete and that it should have further stated the language that we requested. And the other part – That's on the dependent language. Yes. You wanted a different instruction or more to this form instruction that is now being used in the Third Circuit. I did because of the facts of this case. I thought it was critical that that clarification be made, yes. And I would point out, and if I may just revisit one earlier part of this, with clearing, exchanging occurs in Philadelphia. And that was proven. All that happens at the end of the day is that the two banks take these massive numbers, transmit them to New York so that New York can say you owe – you owe you. That is not all that happens in this process. The banking system utilizes intermediaries. They do. But SVPCO, in that part of the clearing process, the exchanging of the checks, the debiting or crediting of the accounts happens here in Pennsylvania. But it wouldn't have mattered if that part of the transaction was in New Jersey because what really mattered was what was in New York, right? Well, yes, and I'm contending that that was not central to anything other than notifying the two banks of where they stand with respect to each other. It really has nothing to do with this transaction. You don't dispute there was action in New York? I don't. I don't. I'm saying – I'm not – well, there are – there is a case that we cited, and I'm sorry I'm drawing a blank on the name, that refers to materiality, but I don't think that's really the issue. I think the issue here is that everything that's necessary to either debit or credit or down the road somewhere say, no, it didn't clear, happens here. Well, I think it really goes back to one of the earlier questions about whether this is just a jurisdictional hook or whether it's an element of the offense. Understood, Your Honor. And I – I see I have 15 seconds left. I – there's also a lot made in the government's brief regarding whether or not this – whether or not there was – this would be relevant to some sort of concealment, whether or not this is not 17 different transactions but rather one. And I think if you read the cases from the government's brief, you'll see that each of those has some very distinguishable characteristic from the cases before you. Thank you very much. Thank you. We'll get you back on rebuttal. Good morning, Your Honor. Honest me, I please the Court. I'm Robert Zosmer on behalf of the government. The interstate commerce element is an element. The government must prove to the jury beyond a reasonable doubt that there was a transaction in interstate commerce. Mr. Zosmer, could I pick up where your adversary just left off, and that is with respect to the scheme. Just what is the scheme here? Is it an overarching scheme aimed at the $225,000, or were these separate, discreet 17 different check-based, as you charged them, individuals? No, the indictment charged in the government proved an overarching scheme, as permitted in a mail or wire fraud prosecution, a continuous scheme by the defendant to loot this woman's funds that he had control over. And there were considerably more than 17 checks in that overall scheme, but just as a matter of prosecutorial discretion, you elected to charge 17 different counts. Exactly. There were hundreds of transactions ranging from, I think, $15 to the amounts that were charged in the indictment. And so definitely this was a continuous scheme, as explained in Schmock by the Supreme Court, in Tiller by this Court. But even more fundamentally, the key answer here to the issue that's been presented is that each execution of the scheme required this clearing. The fundamental answer here that Mr. Lauer gave is that without the clearing that took place, including involving New York, he would not have received the money. He would not have received the money in one instance or in any of the instances charged. And I've heard Judge Barry use the phrase game, set, and match. That's what we're dealing with here. That's really the end of the story. Judge Golden, in his wisdom, went further and looked at it as an overarching scheme in which the success of each is necessary to keep it going. And that's true as well. But really, fundamentally, each individual check does not clear without this wire transaction. The key testimony really is from Mr. Walsh. Mr. Walsh explains that clearing is a two-step process. And Mr. Lauer has only been talking about one part of it. Walsh said it's generally used, so I suppose that the inference is, of course, that it was used here. Correct? Well, his inference was, but then it was proven specifically, as Your Honor pointed out, when McDowell took the stand, because then the exhibits were introduced. And McDowell said wherever there's a number nine, it means we used a SIPCO or whatever it's called in New York, and we introduced the exhibit showing a number nine for every single one of these specific checks charged in the indictment. The two-step process, one is the physical exchange of the checks. That's what my colleague, Mr. Lauer, is talking about. The representatives get together. They actually go through the Federal Reserve, and they physically exchange the checks. In New Jersey, isn't it? Well, in this case, it was actually done in Philadelphia. They're the Kill Bundle Exchange. Exactly. Exactly. There's no reason it needs to be in Philadelphia. It just happens to be our interest state. It just happens that we have a Federal Reserve Bank where we live in Philadelphia. And so the exchange was intrastate. And so, for example, for those dinosaurs like me, who like to continue to get the hard copies of the checks in our statement, a dwindling practice, that's how it happens. That's how my bank gets back the checks. There's two of us, Mr. Zauer. Thank you very much, Your Honor. I get it by e-mail. But that's part one, is the physical exchange. But then there's the money exchange. And that's what we need to talk about. And Mr. Lauer does not talk about. The money exchange is when First Union, in this instance, gets the physical checks. Their people sit down and code it. They code the entry that is sent electronically to New York that says, PNC Bank owes us $10 for this check, or whatever it is. The clearing entity in New York puts together, really, millions of electronic transactions like this, and comes up with a settlement at the end of the day, and then wires money to whichever bank is owed the money. And, of course, this is a very complex process, which is why the clearing entity is used. Let me ask you a question about that. Where should this court draw the parameters of when a wire communication is sufficiently connected to a scheme to defraud for the federal wire statute to attach? Well, we have to follow the guidance of the Supreme Court, which is that it needs to be in furtherance. It needs to be related to the scheme. It doesn't have to be the main part of the scheme. The wire doesn't have to be. Dependent is not part of it? It does have to further the scheme. So does it matter whether Keller depended, or whether Keller relied in some way on the wire transfers involving SVPCO to maintain his relationship with Slavinsky? Because I can't see any basis in the record that would support even a suggestion that he depended on that or relied on that. No, he has to cause the transaction. And causation is established, the courts have said, by reasonable foreseeability. It is reasonably foreseeable that national institutions like First Union and PNC use wire transactions to settle their accounts. That's the proof that the government must establish. Is there any role in this test, we're following up on Judge Sloboda's question, for the level of experience or even sophistication of the defendant? In this case, an attorney who apparently had a commercial practice or a bankruptcy practice? There can be, depending on the issue and depending on the facts. For example, the benefit of the reasonable foreseeable aspect? Definitely. It's an objective test. And so it will rely on the facts and on average intelligence. For example, the Bents case in this circuit held that it's not reasonably foreseeable that when someone gets a check from a local company, that the instruction for the check actually came from New York. It's not reasonably foreseeable when you're dealing with a local entity handing you a check, that there's some interstate transaction involved. Where you're talking about check clearing though, the law pretty much is that it's reasonably foreseeable to anybody that the mails or wires will be used. That goes back to the Pereira case. That was in the 1950s involving a grifter in Texas who deposited a check that he stole from a woman from California. And the Supreme Court said, of course it's foreseeable that the mails will be used between banks to clear checks. And I feel equally confident in 2010 in saying that it's foreseeable to anybody that there will be wire transactions between banks. So your answer to Judge Smith's question is it doesn't matter that he was an attorney sort of in the know with respect to commercial transactions. Well, it's certainly held. It's gilding the lily in this case. I would be confident in arguing this with regard to any defendant. But of course we add that with respect to an attorney who handles bankruptcy matters and settlements, of course he knows that wire transactions are used between banks. Or should have known. Or reasonably could foresee. And so you seem also to be suggesting sub silentio that the passage of 50 some years into a highly electronic age perhaps is a factor as well, at least with respect to the reasonably foreseeable aspect of the generic. It is. These are all facts. Now, again, as the Court has pointed out, this all goes to the jury. The question is can a reasonable juror reach this inference? And the answer, of course. And that's the defense attack here is essentially a sufficiency attack. That's right. That's right. And we rest on the proposition that the jury could readily infer that anyone would reasonably foresee what happened here. The only other thing I need to talk about factually that Mr. Lauer brought up is how the money gets to Mr. Keller's account. He says, all right, well, at the end of the day there's this big bundling and money flies around. And his quote was it has nothing to do with the transaction at all. And I just want to say that the government specifically disproved that. The first union representative testified that they have a list. That's where those number nines were. They have a list of the exact checks. It's not as if PNC has a million dollars transferred out of its account by the clearing agent and the next day asks why did you do that. And no one can give an answer. Well, the amounts are based on the amounts of the checks within the 300, as I understand, within each kill bucket. Exactly. And thus that wire transfer that takes place is the precise money that's going to Mr. Keller's account. And if that check were to bounce or if this fraud were to be exposed, there's going to be a charge back. That's what distinguishes this case from Cannes. Cannes is a case where the bad guy gets the check and cashes it and walks off with the cash. He doesn't care at that point. Here he has an account that he's depositing it in. It's going to be charged back. He's going to lose that money. And one new case that I'd like to call the Court's attention that probably says all this more articulately than I am is a Seventh Circuit case, United States v. Powell. It was decided last month. It's at 576 F. 3, 482. And the specific discussion is at 494. And it says what I just tried to say about Cannes, which is that we now have the uniform commercial code. It's now clear that there will be a reversal of a bad check. And, therefore, the wiring of the funds and the successful wiring of funds by a clearinghouse is essential to any fraud in which you're trying to obtain money. I mean, Cannes was a 68-year-old case. It's a very different world today. Absolutely. Though, again, if we had a case like Cannes or Maize where it was that simple, where somebody, for example, Maize with a bad credit card, person walks into a place, gets the goods, walks out. Or the services. Right. Couldn't care less what happens afterwards. We'd have to concede that we cannot present a mail or wire fraud charge under those circumstances. That's not what's happening here. This is standard wire communications between large banks. He's depositing funds in his own account. And the success of his fraud is dependent on the success of that wire transaction. So it's very straightforward. The jury instruction was the model instruction. This court has not specifically approved it yet. We would suggest that that's appropriate.  And we think that it's fully appropriate and fully submitted the case to the jury. Unless there are further questions, I know there's much else in our brief, but I'll rest on that argument. Thank you very much. Thank you very much. Do we have rebuttal? I think it was three minutes. Did I remember correctly? It won't take that long. Sometimes it takes that long for a lawyer to get up and get to the podium. Thank you. The concern I have is that we are all speaking about this as if everything, as if this wire transfer, I'm sorry, wire transmission some way is central to the deal. And respectfully, I believe it doesn't have to be central. It just has to be relevant or part of it. I think it has to, however, be in furtherance of the scheme. In furtherance. And that's my concern with respect to what you all just discussed with my opponent. The testimony of Mr. McDowell, for instance, on page 469 of the appendix is to this effect, when he was asked what happens with a bounced check. If it was a check that bounces from a group of items that we sent through the bank to us through the clearinghouse, charging us back through the clearinghouse. And it would become part of whatever day they transact that settlement for that day. My point is that occurs in Philadelphia. So all we have is yet another notification at the end of some other day that this just didn't work out, so we're charging it back. And I do agree, by the way, that the Cannes case is so old that we need an update on what happens with respect to the use of these types. And we have it in schmuck, don't we? I'm sorry? We really have it in schmuck. I agree. I think that speaks to the issue. My concern is that the facts of this case, in my view, do not indicate that the only interstate occurrence in any way furthered the commission of the fraud in this case. That's my concern because everything else, and the government proved, everything else happened here in Pennsylvania. That's our position. What Perea says, and Perea, 1954 or not, is still good law, the use of the wires need only be incident to an essential part of the system. And that's exactly what schmuck said. And I agree, but the same cases also indicated that it must further the scheme. And I don't think those are identical concepts, and that's the basis on which we urge your consideration. Thank you. Thank you. Thank you, gentlemen. We'll take the matter under advisement.